In the Matter of DIGITAL PAGING SYSTEMS, INC., Petitioner, v. PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent. RADIO RELAY CORP., Intervenor-Respondent.

Third Department, November 21, 1974.

*Paul, Weiss, Rifkind, Wharton & Garrison* (*Martin London* and *Stephen E. King* of counsel), for petitioner.

*Peter H. Schiff* (*John C. Crary* and *Frank S. Robinson* of counsel), for respondent.

*Gordon, Frutkin & Rabin* (*Myron P. Gordon* of counsel), for intervenor-respondent.

SWEENEY, J. This is an article 78 proceeding by which petitioner, Digital Paging Systems, Inc. (hereinafter referred to as " Digital ") seeks to annul a determination of the Public Service Commission which refused to authorize the purchase by petitioner of 189,998 shares of the voting capital stock of Radio Relay Corp. (hereinafter referred to as " Radio Relay ") and the conversion of $150,000 convertible debentures of Radio Relay into 51,300 shares of common stock of Radio Relay.

Digital, a Delaware corporation, operates six radio common carriers located in cities in Florida, California, Pennsylvania and Ohio. It is not subject to the jurisdiction of the Public Service Commission. Seeking to expand its operations, Digital entered into stock and debenture purchase agreements with a group of Radio Relay stockholders (hereinafter referred to as the " Morrison group ") whereby Digital would purchase all but two shares of the Morrison group's 190,000 shares of Radio Relay and all of their Radio Relay convertible debentures amounting to $150,000 out of a total of $500,000 outstanding.

Radio Relay, a New York corporation, is a radio common carrier, engaged in the communications business mainly in New York City, Buffalo and other large cities in the country. It operates pursuant to authorization from the Federal Communications Commission and is also certified by the New York State Public Service Commission. Radio Relay's outstanding voting stock is owned by two groups, the Morrison group and the " Zuckerman group ", each owning 47½%, with the remaining 5% held by one Barnes, one of Radio Relay's vice-presidents. A shareholders' agreement exists between the Morrison group and the Zuckerman group which provides that as long as both groups are stockholders of Radio Relay, each is entitled to elect two directors to a four-man board of directors.

Digital filed an application with the respondent commission pursuant to section 100 of the Public Service Law, seeking its consent to the purchase of stock in Radio Relay and later amended that petition seeking also permission to convert the debentures. Radio Relay did not join in the application. While the Morrison group supported the application, the Zuckerman group actively opposed it, with Barnes joining in its position. Digital's avowed aim is to ultimately control Radio Relay. Purchase of the stock alone would give Digital approximately 47½% ownership; whereas, if the petition to convert the debentures were approved, Digital would own about 53.6% of the outstanding stock. On the other hand, if all of the debentures were converted thereafter, it would own only about 42%.

Section 100 of the Public Service Law provides, in substance, that no corporation shall purchase more than 10% of the voting capital stock issued by any " telephone corporation " without the consent of the commission, the purchaser of such stock having the burden of showing that such a sale is in the public interest.

Digital raises five points in this article 78 proceeding. First, petitioner contends that respondent has no jurisdiction over Radio Relay because it is not a " telephone corporation " within the definitions of subdivisions 17 and 18 of section 2 of the Public Service Law.

Radio Relay operates a one-way paging service which transmits a " beep " to subscribers who carry pocket-size radio receivers, known as pagers. A person who wishes to contact a subscriber first contacts the carrier by calling a predesignated number utilizing a touch-tone telephone. If no touch-tone telephone is available, the caller may dial the carrier's dispatch office and give the subscriber's number to a dispatcher. The carrier then, either manually or through an automatic interconnected landline telephone procedure, transmits a radio signal which is received only by the pager leased to the subscriber. The message passes automatically from the initiating telephone, over the telephone company's lines, through the carrier's terminal, over the airways, and to the subscriber's pager. The subscriber, upon receiving the " beep " on his pager then may call a given telephone number, return to his office, etc., depending on the prearrangements made with the person using the signal service.

A " telephone line " is defined as including, *inter alia,* " receivers, transmitters, instruments, machines, appliances and all devices * * * used, operated or owned by any telephone corporation to facilitate the business of affording tele-

phonic communication." (Public Service Law, § 2, subd. 18.) A "telephone corporation" includes "every corporation * * * owning, operating or managing any telephone line or part of telephone line used in the conduct of the business of affording telephonic communication for hire." (Public Service Law, § 2, subd. 17.) Respondent noted in one of its recent cases that if the communication service offered by a radio-telephone utility is considered telephonic in nature, then the receivers, transmitters, etc. owned by the radio-telephone utility constitute a telephone line and those who operate such telephone line for hire constitute a telephone corporation. (*Opinion on Jurisdiction over Radio-Telephone Utilities,* 13 NY PSC 1107.)

The commission has concluded that the statutory definitions of "telephone line" and "telephone corporation" were legislatively drafted in broad enough terms to include technological advances in the telephonic communications industry and that the term "telephonic communications" includes the communication services offered by Radio Relay's one-way paging system, regardless of whether or not it is interconnected with a landline telephone company. It ruled that Radio Relay is, therefore, a telephone corporation and Digital's proposed transactions are subject to the jurisdiction of the commission. That Radio Relay's transmission of the "beep" sound, by use of its company owned and/or operated wide variety of equipment included in the definition of a "telephone line", over long distances from one party to another represents "telephonic communication" is amply demonstrated in the record. We find no basis either in the record or in the statute for disturbing that determination.

Petitioner next argues that the commission lacks jurisdiction to require Digital to seek its approval prior to purchasing the Radio Relay debentures since section 100 of the Public Service Law requires only that the commission approve purchases of more than 10% of the voting capital stock of a telephone corporation. An examination of the record reveals that petitioner admits its intent to convert the debentures into common stock as soon as possible. Immediate conversion of the debentures, as a matter of fact, is Digital's vehicle to its admitted goal of control over Radio Relay. Thus, the commission's assertion of jurisdiction under section 100 over the purchase of the debentures was warranted and should be upheld.

Section 101 requires the approval of the commission before a telephone corporation may issue stock. The commission refused

to entertain Digital's application to convert the Morrison group's debentures into voting stock of Radio Relay on the ground that Radio Relay did not join in the application. Petitioner maintains this was error because neither section 100 nor 101 requires that the issuing utility be a party to the petition. We do not agree. As a general principle, it is not for the courts to establish administrative policies pertaining to forms and procedures promulgated by administrative agencies. The information required in the petition for a stock issue pursuant to section 101 under the rules of procedure of the Public Service Commission (16 NYCRR Part 37) clearly indicates that the issuing corporation itself must petition. Much of such information must be obtained from the corporation's records which are not accessible without the corporation's consent. If a security holder's contractual rights are violated because of the utility's failure to make application under section 101, he has his remedy in a court of law. To require the issuing corporation to apply to the commission for authorization to issue its stock is grounded in good sense, and we see no reason to disturb respondent's ruling.

With respect to its refusal to authorize the stock purchase by Digital, the commission found that an internal conflict would directly result between the new owners and the remaining stockholders, the Zuckerman group, which presently holds 52.2% of the outstanding stock, and that such internal conflict within a utility exercising a public franchise would not be in the public interest as required by section 100. Petitioner's final arguments are that the commission employed an erroneous standard in judging the public interest, asserting that its determination was arbitrary, capricious and contrary to law, but assuming such standard was proper, in any event, there was not substantial evidence to support its determination that the stock purchase would not be in the public interest.

An examination of the record readily demonstrates that the proposed transaction precipitated a deadlock in Radio Relay's board of directors on which each of the two groups of stockholders has two representatives. The commission found that consummation of the proposed stock purchase would aggravate that conflict by virtue of Digital's potential use of the stockholders' agreement between the Morrison group and the Zuckerman group which further provided, albeit ambiguously, that it " shall bind the respective parties  *  *  *  their successors and assigns." The record further reveals, and the commission found, that Digital and Radio Relay were rivals and com-

petitors for the acquisition of companies in the communications field. Digital's potential for harassing and encumbering its smaller rival led respondent to conclude that the likelihood of internal conflict remained formidable, regardless of whether Digital becomes a majority or minority stockholder. The commission further concluded that the conflict was an obstacle to financing and a drain on the time and resources of the management of the regulated company. It can fairly be implied that the commission was concerned with protecting stockholder investments, the public and creditors by preventing disruption of Radio Relay's internal affairs, although such intent was not specifically spelled out in its determination.

Three public interest considerations were listed by this court in *Matter of International Ry. Co.* v. *Public Serv. Comm.* (264 App. Div. 506, 510) which it considered " directly related to and limited by the main purposes of the Public Service Law." They were: " ' to guarantee to the public safe and adequate service at just and reasonable rates, to the stockholders of public service corporations, a fair return upon their investments, and to bondholders and other creditors, protection against impairment of the security of their loans.' (Laws of 1929, chap. 673, § 3.) " The words used may be different, but the essential concerns are the same. We conclude that respondent's standard for judging the public interest in the present case was entirely proper and its determination that the proposed stock purchase would not be in the public interest was reasonable and amply supported by the record. It should not, therefore, be judicially disturbed. Our review ends when a rational basis is found for an agency's determination. (*Rochester Tel. Corp.* v. *United States,* 307 U. S. 125, 146; *Matter of Sullivan County Harness Racing Assn.* v. *Glasser,* 30 N Y 2d 269, 277.)

The determination should be confirmed, and petition dismissed, with costs.

HERLIHY, P. J., KANE, MAIN and REYNOLDS, JJ., concur.

Determination confirmed, and petition dismissed, with costs.