SUMMERS, Chief Justice.
In this 1977 proceeding before the Public Service Commission the applicant Radio & Communication Consultants, Inc., (Radio) seek a certificate of public convenience and necessity as a radio common carrier under the provisions of Sections 1500-04 of Title 45 of the Revised Statutes. The application seeks authority to serve in the Shreveport and Natchitoches, Louisiana, area. The application was protested by Southern Message Service, Inc. (Southern), who claim it has held a certificate of public convenience and necessity as a radio common carrier issued by the Commission since prior to 1968 to serve the same area.
*876 After a hearing held on May 26, 1977 the Commission issued its order dated July 21, 1977 granting to Radio a radio common carrier certificate in the Shreveport and Natchitoches area. In that order the Commission found that applicant’s witnesses testified that service from protestant Southern had not been completely adequate and that complaints had been registered with that company. According to the Commission’s order, one witness further testified that he had to invest in his own system because service from Southern and South Central Bell Telephone Company had not been adequate. In the Commission’s opinion “the public convenience [and] necessity” required issuance of the certificate.
An application for rehearing by Southern was denied by the Commission. Southern then appealed to the Nineteenth Judicial District Court pursuant to the authority of Section 21(E) of Article IV of the Constitution and Sections 1192-95 of Title 45 of the Revised Statutes. In its petition for appeal in the District Court Southern sought and was granted a preliminary injunction restraining and prohibiting the carrying out the Commission’s order pending proceedings on appeal and until a judicial determination was made of the legality of the Commission’s order.
While the validity of the Commission’s order was under consideration by the trial judge Southern moved that Radio show cause why it should not be adjudged in contempt of court for filing for and actively pursuing an application with the Federal Communications Commission for authority to begin operations as a radio common carrier. This action by Radio was alleged to be in direct contempt of the preliminary injunction issued by the District Court.
With the proceedings in this posture the District Court rendered judgment on the merits of the controversy in favor of Southern, annulling, voiding and setting aside the Commission’s order. The trial judge was of the opinion that the testimony of Radio’s witnesses “fell short of showing that plaintiff’s [Southern’s] service was inadequate, much less that it has failed, refused or neglected to provide reasonably adequate service after notice.” Furthermore, the trial judge was of the opinion that the Commission erroneously applied a test applicable to other common carriers, a test inapplicable to radio common carriers. Radio and the Commission then appealed devolutively to this Court.
Radio contends on appeal that Southern does not hold a certificate of public convenience and necessity for Natchitoches and is not authorized to serve that city. Radio also contends here that the Commission’s order is supported by evidence and should not have been annulled in the District Court.
Section 1500 of Title 45 of the Revised Statutes invest the Louisiana Public Service Commission with power to regulate radio common carriers. Section 1502 of that Title imposes the duty on the commissioners to prescribe appropriate rules and regulations. The statute mandates that the Commission make such orders as are necessary to insure that radio common carrier rates, services, rules and regulations are reasonable, just, adequate and not unduly preferential.
Commission certificates must be issued on a finding that the operation is required by the public convenience and necessity before any mobile radio system can be begun, continued, constructed or operated. Generally, no carrier is required to secure a certificate for extension within a municipality or territory when operations are already commenced. Id. 1503 A.
Operators of radio common carriers already certificated on July 31, 1968 received a certificate of convenience and necessity from the Commission to continue if they applied therefor within thirty days of July 31, 1968. Southern’s is such a certificate.
Section 1503 C, which is particularly pertinent to the issues presented here, provides:
“The Commission shall not grant a certificate for a proposed radio common carrier operation or extension thereof which will be in competition with or duplication of any other radio common carrier unless it *877 shall first determine that the existing service is inadequate to meet the reasonable needs of the public and that the person operating the same is unable to or refuses or neglects after hearing on reasonable notice to provide reasonable adequate service.”
I.
Radio’s first contention on appeal is that Southern does not hold a certificate of public convenience and necessity for Natch-itoches and is not authorized to serve that city. The contention is not well-founded.
Southern’s certificate reads:
“A certificate of public convenience and necessity is hereby granted Southern Message Service, Inc., a Radio Common Carrier Company under the laws of Louisiana, whose office or place of business is Shreveport, Louisiana, to provide domestic land mobile radio service between a land station and mobile units within the service area of the central land radio telephone stations (s) at: (1) 627 Crockett St., Shreveport, La.; (2) Approx. 3.2 miles S.E. of Pleasant Hill, La., (3) Dixie Street, Minden, La., (4) 115 West Broad St., Lake Charles, La., (5) 416 Grammon Street, Monroe, La.
Natchitoches is roughly seven miles southeast of Pleasant Hill and is therefore less than 4 miles from the service area of the radiotelephone station situated approximately 3.2 miles southeast of Pleasant Hill. This makes Natchitoches well within the service area of Southern’s Pleasant Hill station.
The fact that Natchitoches is not named in the certificate does not mean that the city is not within the service area of Southern’s transmitter near Pleasant Hill. One of the principal stockholders of Southern and the company president testified that a Natchitoches customer could telephone another customer in that city without making a long-distance call through Shreveport if he requested that service. No base station is situated in Natchitoches, but a control station is in operation there and Southern offers its service in and around the city.
II.
A hearing examiner was appointed by the Commission to hear this case in Alexandria, some distance from the Commission’s domicile in Baton Rouge. At the outset of the hearing Southern’s attorney objected that Southern had not been given proper notice. The entire proceeding was initiated by a brief letter from Radio’s attorney to the Commission, the pertinent portion of which stated:
“Application is hereby made on behalf of our client for a certificate of public convenience and necessity as a radio common carrier, as that term is defined in La.R.S. 45 § 4500 [1500], et seq., authorizing our client to operate as a radio common carrier within the municipalities of Shreveport and Natchitoches.
“Please accept this application and notify us of the date set for hearing. We will provide the names and addresses of witnesses to testify on behalf of the applicant sufficiently in advance of the hearing.”
Radio’s application, Southern argues, has no allegations that the service is inadequate, or of Southern’s failure to properly serve the public, it only asks for a certificate to operate in Southern’s territory. Nevertheless, the hearing proceeded.
Southern’s brief here also points out that the Commission failed to adhere to its “Rules of Practice and Procedure”. Rule 13(D) sets forth the requirements of all pleadings before the Commission:
1) The name of the party seeking to bring about or prevent action by the Commission or other parties.
2) The names of all other parties in interest.
3) A concise statement of the ultimate facts relied upon by the pleader.
4) A prayer stating the type of relief, action or order desired by the pleader.
5) A list of the witnesses who may be called in the event of an oral hearing, and the anticipated time of presentation of the case.
*878 6) Any other matter required by statute or rule.
7) A certificate of service, where service is required by Rule 7(c).
Southern contends that the failure of an administrative agency to adhere to the rules and regulations governing its proceedings is a violation of the constitutional guarantee of due process.
Although the application in this case does not comply with the Commission’s rule in every detail, not even by a correct reference to the statutory authority under which the certificate is sought, the record does supply compliance with some of the deficiencies. A list of interested parties was mailed by the Commission to Southern and others, and the Commission staff did keep the parties informed of the time and place of the hearing. Radio’s letter application also fulfills some of the requirements. Despite the technical failure to observe the rules in some respects there is no felt necessity to meet the due process issue here. The proceeding did develop into a full hearing, after adequate notice, at which both parties presented evidence and had an opportunity to confront the witnesses against them. Southern was well prepared and did protest the application to the full extent. Moreover, Southern has not particularized how it was prejudiced in the premises, nor is prejudice claimed on account of the Commission’s disregard of its rules.
III.
One of the principal questions before the court is whether Radio has satisfied the requirements of Section 1503 C of the statute which prohibits the Commission from granting a certificate on an application if it will be “in competition with or duplication of any other radio common carrier.”
Section 1503 C imposes strict prohibitions against commission certification of applicants where there will be competition or duplication as in the case at bar. Not only does the record establish that competition and duplication will occur, but there is a pervasive tone in Radio’s presentation of its case that it is their intention to serve as Southern’s competitor. To this observation can be added the fact that in the past Ark-La-Tex Mobile Radio Service was once a competitor of Southern in the Shreveport territory, at least until 1971. Because of the limited demand for this duplication of service Ark-La-Tex met financial reverses and its business was acquired by Southern. South Central Bell also owns and operates a radio common carrier system in Shreveport and environs. Other large users, such as the Doctor’s Exchange and IBM, have their own systems. These are not common carriers, but their existence definitely limits customers available to the common carriers.
In addition to the obvious legislative intent to avoid unnecessary competition and duplication of facilities in this area of regulated communications, two additional prerequisites to certification are set forth in Section 1503 C. The Commission must first determine that “the existing service is inadequate to meet the reasonable needs of the public.” Should such a determination be made, the Commission must also find that “the person operating the same [existing facility] is unable to or refuses or neglects after hearing on reasonable notice to provide reasonable adequate service.” Communications Ind., Inc. v. Louisiana Public Service Commission, 260 La. 1, 254 So.2d 613 (1971); Billie White d/b/a Telephone Answering Bureau v. Louisiana Public Service Commission, 259 La. 363, 250 So.2d 368 (1971).
Neither of these requirements were found to be met by the trial judge and we discern no support in this record for a finding that Southern’s service is “inadequate to meet the reasonable needs of the public.” A statute requiring such a determination amounts to a limitation upon the Commission’s concept of public convenience and necessity in that, when the service is “adequate to meet the reasonable needs of the public”, public convenience and necessity is satisfied.
Southern has been operating in the Shreveport and Natchitoches area since pri- or to 1968. In the year preceding the hear *879 ing in 1977 it had received no written complaints regarding its service. Although acknowledging verbal complaints in a limited number, the character of the complaints were such that they could not be considered serious or numerous enough to support a determination that its service was “inadequate to meet the reasonable needs of the public.” To the contrary, a description of its service was impressive.
Witnesses who testified in support of Radio’s application cited instances of service they considered faulty two or three years prior to the hearing. One such complaint involved problems with a rented radiophone. After several efforts to have the unit repaired by Southern, the witness turned it in and was given a full refund. Later, however, he again sought Southern’s service and was dissatisfied because they required a $500 deposit before another unit would be installed for him. In essence his complaint arose out of the malfunctioning of a unit not manufactured by Southern and one which Southern made efforts to adjust to the customer’s satisfaction.
Over an objection to hearsay the wife of a man self-employed in the oil field diamond-coring business testified that her husband called Southern in 1975 for a mobile telephone. Southern had no units in stock and offered to order one. Because he was on the bottom of the waiting list he abandoned the request.
In 1974 or 1975 another witness had his wife order a radiophone from Southern to install in his truck. When a unit was not readily available he obtained one from South Central Bell. Because their channels were overloaded and delays were involved in completing calls, he discontinued the Bell service. He never used Southern’s service.
A Consulting Petroleum Engineer operating in Shreveport, East Texas, South Arkansas, North Louisiana, South Louisiana, South Texas and Oklahoma applied for mobile radio service with Southern in 1974. His need for a multichannel set could not be met at that time so he bought one from Motorola for $1,675. The unit performed satisfactorily in all locations except Shreveport until a Motorola Engineer made an adjustment which made the unit work “good ever since.” His associates left the Bell system and subscribed to Southern’s service because Southern’s service included advantages not offered by Bell. When a subscriber was called over Southern’s system and no answer was received Southern would ascertain who the calling party was and make that information available to the subscriber later, a service which the witness said was really good. He objected, however, to the fact that he was charged 20 cents for each such call. He also said he could use a portable radiophone, one not necessarily installed in an automobile, and he would have preferred to rent the unit he bought from Motorola instead of buying. The witness concluded that he was then a subscriber to Southern’s service and “couldn’t do without them really.” He also described the service of Southern’s operators as “superb”.
Southern Research Company in Shreveport has 300 employees. Its Executive Vice-President testified their business required mobile phone or pager type service. It was currently using Southern’s paging service. Prior to and during 1975 they had problems getting coverage with the pagers in the Shreveport Metropolitan area. For this reason the company acquired its own radio system. However, Southern’s service is still used for pagers. The vice-president said his company could use the voice-tone pager proposed to be furnished by Radio. A radio communications carrier in Natchi-toches would be advantageous to his company, he explained. Otherwise this witness was not acquainted with whether the strength of Southern’s stations had been increased since 1975, nor did he know whether Southern has since provided a voice-tone pager service.
Southern’s President testified. He is a resident of Dallas, Texas. The company is owned in equal shares by him and Betty Cannon of Monroe, Louisiana. He said that the company served the Shreveport-Natchi-toches area with the same service proposed by Radio, plus additional service which Ra *880 dio does not propose to offer. His company also offers the voice-tone, “walkie talkie” equipment upon request, the demand being minimal for this service. This witness made a detailed recitation of Southern’s service to support its position that Radio would offer no service Southern was not then offering, explaining recent improvements and expansions of its service. No increase in rates has been requested by Southern since 1973, and no request for an increase was anticipated. By efficient operation and maintaining a low cost level, and by employing efforts to minimize operational costs Southern has been able to make a “modest profit”. If Radio were to become certificated and would get half of Southern customers Southern would be in trouble, he said, and would have to ask for a rate increase because of the reduced income. Southern was opposing Radio’s application in order that its investment could be protected to serve the customers adequately.
By other testimony and evidence Southern established that its service was good and adequate to meet all requests in the area it served. Customers in the service area attested to the Southern’s good and adequate service.
When two radio common carriers are in direct competition there is a duplication of material and personnel. The high ratio of expense to income limits the amount of capital available to a business for growth and improved service to customers. This condition is compounded in the present case by the presence of South Central Bell and the significant limitation of available customers on account of private mobile radio facilities. Evidence of the result of over duplication of service is apparent in this case. Ark-La-Tex and Southern could not both operate profitably in the same area. After sustaining losses Ark-La-Tex was obliged to sell its business.
It is a basic tenet of public utility regulation that there be no wasteful duplication of facilities. To carry out this concept General Orders of the Commission are designed to prohibit uneconomic and wasteful practices. Such a standard, and the reasons for requiring certificates of convenience and necessity, is to prevent the unnecessary duplication of facilities and to protect the consuming public from inadequate service and higher rates. Public convenience and necessity therefore require that there be no wasteful duplication and that the need be such that duplication will not result in waste. Kentucky Utilities Co. v. Public Service Commission, 252 S.W.2d 885 (Ky.1952); City of Vanceburg v. Plummer, 275 Ky. 713, 122 S.W.2d 772 (1938). On these principles the Commission should refuse to permit a utility to invade territory occupied by another utility furnishing adequate service at reasonable rates.
Radio has presented no evidence that Southern is unable or refuses or neglects to provide reasonable adequate service.
This record satisfies the Court that Radio has not sustained the burden of proof required by Section 1503 C of Title 45 of the Revised Statutes.
For the reasons assigned the judgment of the District Court is affirmed.
TATE, J., dissents and assigns written reasons.
CALOGERO, J., dissents.
DENNIS, J., dissents for the reasons assigned.