## RCC OF VIRGINIA, INC.

### V.

## ROANOKE AND BOTETOURT TELEPHONE COMPANY, ET AL.

March 12, 1982.

Record No. 811345.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson, and Stephenson, JJ., and Harrison, Retired Justice.

*Holmes C. Harrison (Clark, Bradshaw, Harrison and Layman, P.C.,* on brief), for appellant.

*Lewis S. Minter; George E. Honts, III; Tommy L. Moore (Russell W. Cunningham; Edward C. Tosh; Carter, Roe, Emick and Honts, P.C.,* on briefs), for appellees.

COMPTON, J., delivered the opinion of the Court.

This appeal of right stems from a dispute between a telephone company and a radio common carrier, both engaged in providing a radio paging service, over the meaning of a statute which applies solely to telephone companies.

Insofar as pertinent here, a radio paging system provides one-way radio communication with an individual or group of individuals. The customer subscribing to the service carries a small radio receiver, called a "pager" or "beeper." The pager is activated when the calling party dials a specific telephone number; through use of an automatic control terminal, a radio transmitter is then energized which sends, via an antenna, a radio signal that can be received only by the pager assigned the telephone number. The pager, depending on the service provided, emits a tone-only or a tone-and-voice message.

This proceeding commenced in July of 1980 when appellee Roanoke and Botetourt Telephone Company filed an application with

the State Corporation Commission asking that its certificate of public convenience and necessity as a telephone company be amended. The applicant sought, under the Utility Facilities Act, Code §§ 56-265.1 to -265.9, authorization to provide radio paging service in Roanoke County and the Cities of Roanoke and Salem, located in the Roanoke Valley. In addition to its landline telephone service, the applicant had been authorized to provide paging service in adjacent Botetourt County.

Filing protests to the application were the Chesapeake & Potomac Telephone Company and appellant RCC of Virginia, Inc. C & P provides landline telephone service in Roanoke County and the Cities of Roanoke and Salem. It also provided radio paging service in the area the applicant proposed to serve.

RCC, pursuant to the Commission's authority under another chapter of Title 56 of the Code, §§ 56-508.1 - 508.7, offered paging service as a radio common carrier in portions of Botetourt County, in Roanoke County, and in the Cities of Roanoke and Salem.

Following an ore tenus hearing before one of its hearing examiners, the Commission, one commissioner dissenting, adopted the findings contained in the hearing examiner's report and granted the applicant's request. Accordingly, the Commission ordered the applicant's certificate of public convenience and necessity amended "for the limited purpose of authorizing applicant to provide one-way mobile radio paging service in the Cities of Roanoke and Salem, and County of Roanoke." From the Commission's final order of May 5, 1981, supplemented by a written opinion, RCC has appealed; C & P has not.

This dispute began to evolve in late 1977 and early 1978. At that time, utilizing an antenna on Tinker Mountain in southern Botetourt County, the applicant began offering paging services not only to customers living and working within its Botetourt certificated area but also to persons living and working outside that area in the Roanoke Valley. In June of 1978, upon complaint of RCC, the Commission notified the applicant that a telephone utility could not provide radio paging services beyond the boundaries of its certificated area.

Subsequently, the applicant sought to amend its certificate of public convenience and necessity to provide service similar to that requested in the instant proceeding. In an April 1979 order, the Commission denied that application. It ruled that the regulatory

plan in this State "does not provide for competition between telephone utilities either in the provision of landline service or radio common carrier service." The Commission further stated that one telephone company could not "move into" the certificated territory of a second telephone company to provide service unless it proceeded under Code § 56-265.4, which required proof that the second company was rendering inadequate service.* The applicant expressly disclaimed an intention to proceed under that statute in 1979.

During the 1980 session of the General Assembly, the applicant supported legislation to change the regulation of telephone companies seeking to offer paging services. Code § 56-265.4:3 (hereinafter the Statute), the focal point of this appeal, was enacted. Acts 1980, ch. 294. Eleven days after the effective date of the Statute, the applicant instituted this proceeding, relying on the new enactment.

The Statute, passed as a part of the Utility Facilities Act, Chapter 10.1 of Title 56 of the Code, provides:

"§ 56-265.4:3. Mobile telephone service or radio paging service in certificated territory of another company. — Nothing contained in this chapter shall prevent the Commission, upon application from a telephone company, from permitting the applicant to provide mobile telephone service or radio paging service in the certificated territory of another telephone company if, upon a hearing, either formal or informal as may be determined by the Commission, after written notice to all affected parties, the applicant demonstrates to the satisfaction of the Commission that: (i) The applicant is duly licensed by the Federal Communications Commission to provide mobile telephone service or radio paging service in its own certificated territory; (ii) the applicant's mobile telephone or radio

---

* "§ 56-265.4. Certificate to operate in territory of another certificate holder. — No certificate shall be granted to an applicant proposing to operate in the territory of any holder of a certificate unless and until it shall be proved to the satisfaction of the Commission that the service rendered by such certificate holder in such territory is inadequate to the requirements of the public necessity and convenience; and if the Commission shall be of opinion that the service rendered by such certificate holder in such territory is in any respect inadequate to the requirements of the public necessity and convenience, such certificate holder shall be given reasonable time and opportunity to remedy such inadequacy before any certificate shall be granted to an applicant proposing to operate in such territory."

paging service as licensed was designed to serve customers within the applicant's existing certificated area, but the reliable service area of the applicant's system incidentally extends into a contiguous area certificated to another telephone company; (iii) the applicant's proposed service does not, by reason of harmful electrical interference or other practical reason, interfere or conflict with any like service; and (iv) it is in the public interest to grant the request."

Initially, we must determine legislative intent and ascertain the purpose of the Statute.

RCC, a radio common carrier and not a telephone company, prosecutes this appeal attacking the Commission's interpretation of the Statute, which relates exclusively to telephone companies and does not mention radio common carriers. Nonetheless, RCC's standing was not questioned below and is not vigorously assailed here.

RCC contends the Statute, given the "long-standing prohibition against a telephone company operating in the territory of another telephone company," was merely intended to "permit customers to lawfully receive signals from one company while traveling in the certificated territory of another." RCC says the Commission improperly read into the Statute language which would allow "a telephone company not only to send its signals to customers while they are traveling in another company's area, but also to sell its services to persons living or working in that other company's area." We think the Commission correctly interpreted the Statute.

As the applicant and the Commission, appearing before us as a party appellee, point out, the Utility Facilities Act, prior to enactment of the Statute, provided for a regulated monopoly of landline telephone companies in this State. They were assigned defined territorial areas for rendition of their services. The service terminated at the extremity of a company's plant extensions. And it was difficult for one telephone company to obtain authority under § 56-265.4, *supra,* to provide telephone service, including radio paging, within an area already certificated to another telephone company because of the requirements of that section dealing with inadequate service.

But a radio paging system, by its very nature, is not subject to rigid territorial limits; radio waves do not dissipate or change direction at a geographical boundary separating one telephone com-

pany's certificated area from another. Indeed, the concept of paging service is based on the mobile customer. And, as Commission counsel notes, the certificate granted by the Commission places no limit upon the strength of the radio signal, a function of the Federal Communications Commission, nor does the State Corporation Commission fix the exact location of the transmitter, although it must be positioned within the service area of the company providing the service. *See* Code § 56-265.2. Thus, prior to enactment of the Statute, a customer of the applicant having a residence or place of business within its certificated area could lawfully receive a radio paging signal wherever he was located within the signal radius, whether within or without the applicant's assigned area. But the company could not solicit business from prospective customers who lived and worked beyond its certificated territory. The 1980 General Assembly acted to alter the manner of regulation of telephone companies offering radio paging service.

■ Consequently, we hold, as the Commission implicitly found, that the General Assembly in enacting the Statute did not perform a useless act by merely legitimating the receipt of radio signals outside a telephone company's certificated area. Rather, we believe, as the Commission explicitly found, that the Statute was enacted to modify the regulatory framework within the Commonwealth to provide for "limited competition among telephone companies seeking to offer radio paging service beyond their respective areas of landline telephone services." Manifestly, the foregoing conclusion is dictated by the clear wording of the Statute: "Nothing contained in this chapter shall prevent the Commission, upon application from a telephone company, from permitting the applicant to provide . . . radio paging service in the certificated territory of another telephone company if . . . the applicant demonstrates to the satisfaction of the Commission [the enumerated requirements]." The language "to provide . . . paging service" does not simply refer to the spillover of radio waves into another company's area; instead it permits, as we have just said, a company to offer services to customers beyond the boundaries of its certificated territory.

Having determined the Commission correctly decided legislative intent and the meaning of the Statute, we turn to the remaining issue: Did the Commission properly find the applicant had met the enumerated requirements of the Statute?

There is no dispute that the first and third prerequisites were satisfied. The applicant was properly licensed by the Federal Communications Commission to provide radio paging service in its own certificated territory in Botetourt County. In addition, the proposed service did not conflict with any like service, "by reason of harmful electrical interference or other practical reason."

As to the second and fourth statutory factors, we reject RCC's contention that the evidence fails to support the Commission's findings in favor of the applicant. The Commission decided, as to the second requisite, that the applicant had proved its paging service was designed to serve customers within the applicant's existing certificated Botetourt area, but the reliable service area of the applicant's system "incidentally" extended into the contiguous Roanoke Valley area certificated to C & P. RCC contends that the Commission imposed a lesser, and improper, burden of proof upon the applicant and, further, that the facts show applicant's system was designed primarily to serve the Roanoke Valley and thus does not "incidentally" extend into C & P's certificated area.

As to the fourth prerequisite, the Commission found the applicant demonstrated that granting the request would be in the public interest. RCC, conceding the evidence showed there is a public need for paging services in the Roanoke-Salem area, asserts the Commission "confused public need with public interest." RCC argues the "area is well served" and that the two certificated carriers, C & P and RCC, "can and do serve the area with the latest in equipment and technology, and have the capability of serving potential growth for the area." RCC says the public interest is not served if a third carrier is allowed "to drain off business from the two certificated carriers."

A recitation of the evidence on the foregoing issues is unnecessary. We have closely examined the record, including the Commission's carefully documented, thorough opinion as complemented by the hearing examiner's detailed report. We are satisfied the Commission applied the proper standard of proof and that there is credible evidence to support the Commission's conclusions on the second and fourth statutory requirements; they involve purely factual matters.

For these reasons, the final order of the Commission will be

*Affirmed.*