554 So.2d 47 (1989)
SOUTHERN MESSAGE SERVICE, INC., Appellee,
v.
LOUISIANA PUBLIC SERVICE COMMISSION and Cameron Telephone Company, Appellants.
No. 89-CA-2121.
Supreme Court of Louisiana.
December 11, 1989.
*48 James Field, Gary, Field, Landry & Dornier, Baton Rouge, Oliver Stockwell, Thomas Henning, Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, Robert Rieger, Jr., for appellants.
Carlos Spaht, Baton Rouge, for appellee.
DENNIS, Justice.
In this case we must determine the proper construction of the exemption granted land line telephone companies in the radio common carrier statute, La.R.S. 45:1501-1504. The Public Service Commission issued an order authorizing Cameron Telephone, a land line telephone company, to construct and operate a radio tower in Lake Charles for the purpose of conducting pager operations in the Lake Charles metropolitan area. Southern Message Service, the certificated radio common carrier currently operating in Lake Charles, opposed Cameron Telephone in the Public Service Commission and appealed from its order. The district court found that Cameron Telephone had failed to make the showing necessary under La.R.S. 45:1503(C) to authorize *49 the Commission to grant a certificate in an area where a radio common carrier was already certificated and operating. The court remanded the case to the Commission for the hearing of additional evidence. From this decision, the Commission and Cameron Telephone appealed.

Facts
Cameron Telephone is a land line telephone company operating primarily in Cameron Parish, but with territory extending into Calcasieu Parish. In connection with its land line telephone business, and pursuant to this court's decision in Cameron Tel. Co. v. Louisiana Pub. Serv. Comm'n, 440 So.2d 694 (La.1983), cert. denied, 466 U.S. 959, 104 S.Ct. 2171, 80 L.Ed.2d 554 (1984), Cameron operates a radio paging service within and adjacent to its service area. The transmitting tower for this service is located adjacent to its exchange in Carlyss, and its range allows Cameron to service part, but not all, of the Lake Charles metropolitan area.
Seeking to expand its paging operations to cover the entire Lake Charles area, Cameron Telephone sought and received radio common carrier frequencies from the Federal Communications Commission for the Lake Charles area. It then filed an application with the Public Service Commission for permission to construct a tower within Lake Charles.[1] Cameron Telephone claimed entitlement to permission under two separate theories. First, it argued that the exclusion of land line telephone companies from the definition of "radio common carriers" in La.R.S. 45:1501 meant that land line telephone companies did not have to comply with the certification requirements of La.R.S. 45:1503. Alternatively, Cameron Telephone alleged that it could meet the certification requirements of § 1503 by showing that (1) the existing service, which was operated by a certificated radio common carrier, Southern Message Service, was inadequate to meet the reasonable needs of the public, and that (2) Southern Message Service refused to, neglected to or was unable to provide reasonable adequate service.
Southern Message intervened in the proceeding and opposed Cameron's application. At the hearing, Cameron Telephone moved that the Commission grant the application without hearing on the grounds that Cameron Telephone was entitled to operate the paging service of right. The hearing examiner denied this motion on the grounds that it was beyond his authority as a hearing examiner, and the parties proceeded with the hearing. Following the hearing, the matter was taken up by the Commission.
The Commission, in Order No. U-16526, granted Cameron Telephone's application. After reciting the procedural facts of the application, the Commission stated two alternative grounds for this action:
[I]nasmuch as South Central Bell has not been awarded the frequencies to conduct paging service, which it could provide without a requirement of certification as a radio common carrier, the Commission is of the opinion that the exemption from certification provided in R.S. 45:1501 extends to Cameron Telephone Company which may commence operations without certification as a radio common carrier. However, the evidence submitted by Cameron as to the need for reliable paging service in Lake Charles is completely adequate for the issuance of a certificate of public convenience and necessity as a radio common carrier. The witnesses presented demonstrated that Southern Message Service operates its service through an agent rather than as the certificated carrier and the service is deemed to be inferior by several witnesses who testified that pagers were not made available when requested by customers and that the radio common carrier does not offer long range service. The evidence also indicated that the transmitter is frequently out of service for a number of days which in such instances required the customers to acquire *50 a mobile radio in a vehicle as the Southern Message Service pager could not be trusted during emergencies.
The Commission denied a motion for reconsideration, and Southern Message appealed to the 19th Judicial District Court. Radiofone, another radio common carrier, and the Louisiana Association of Radio Common Carriers intervened in the appeal.
Before the appeal was decided, these intervenors filed an Application for a Declaratory Order before the Commission, seeking a ruling on whether Order No. U-16526 would have precedential effect and constituted a change in the Commission's previous policy regarding land line telephone companies operating radio common carrier service. The appeal was stayed pending the Commission's decision in the declaratory order application. In Order No. U-17858, the Commission declared that its previous order had no precedential effect. The declaratory order stated in part:
It is the decision of the Commission that the Cameron Orders ... were based upon the peculiar facts present in that record. The Commission is satisfied that Cameron Telephone Company had shown the public necessity and convenience would be promoted by it providing paging service in the requested area, as had been historically required by past Commission orders and policy. As such the Commission's decision in Cameron Telephone Company, ex parte bearing LPSC Docket No. U-16526 was not intended as a precedent regarding the construction of towers outside the wireline territory of a wireline telephone company. In summary, to the extent that LPSC Orders No. U-16526 and No. U-16526-A [the denial of reconsideration] necessitate clarification, let it be known that the Commission did not intend to hold that the construction or operation of radio common carrier facilities outside a telephone company's wireline territory are exempt from certification by the Commission. This order shall in no way be construed to infringe upon the authority granted Cameron Telephone Company in the Cameron Orders.
After this decision, the intervenors withdrew and the appeal proceeded. The district court reversed the grant of the certificate. In written reasons for judgment, the trial court stated that the certification requirements of La.R.S. 45:1503(C) had not been met. The statute requires proof that the existing service is inadequate and that the person operating the service is unable to or refuses or neglects to provide adequate service, but the court found "no clear-cut evidence" of the first element and "no credible evidence" of the second. The court remanded the case to the Commission "for the taking of further evidence as whether SMSI is able and willing to provide reasonable adequate service, or is `unable to or refuses or neglects, after the prior hearing, to provide reasonable adequate service.'"

Must a Land Line Telephone Company Seek Certification under the Statute?
Southern Message maintains that the district court was correct both in finding the certification under R.S. 45:1503(C) applicable and in finding that that standard had not been met. Cameron argues that because it is a land line telephone company it is exempt from any certification requirement under the radio common carrier statute. The Commission apparently also takes the position that certification is not necessary under that statute, and claims that it retains the power to regulate Cameron under its general authority over the activities of telephone companies.[2] We must delineate the proper scope of the exemption contained in La.R.S. 45:1501 to determine whether the Commission properly *51 granted the certificate. Considering the history and purpose of the statute, we hold that the exemption applies only to land line telephone companies operating within their geographical territory. Consequently, telephone companies wishing to offer radio common carrier service outside their land line service areas in an area where another radio common carrier already provides such service must make the regular showing required by La.R.S. 45:1503(C).
La.R.S. 45:1501 provides in pertinent part:
C. The term "radio common carriers" when used in this Chapter includes every corporation, company, association, partnership and persons and lessees, trustees, or receivers, appointed by any court whatsoever owning, operating or managing a radio common carrier or public "for hire" radio service engaged in the business of providing a service of radio communications between mobile and base stations, between mobile and land stations, including land line telephones, between mobile stations or between land stations, but not engaged in the business of providing a public land line message telephone service or a public message telegraph service.
D. Notwithstanding any provisions of R.S. 45:781 through 45:790 inclusive, or any provision of this Chapter, the term "radio common carrier" as used in this Chapter shall not be construed to mean a company operating under the provisions of Title 45, Chapter 8, of the Louisiana Revised Statutes, and no such radio common carrier shall have any of the powers, rights or duties provided for and prescribed by said Title 45, Chapter 8.
The radio common carrier statute was enacted in 1968. At approximately the same time, similar statutes were enacted in other states. See, e.g., Fla.Stat.Annot. § 364.41 (1968) (repealed by § 3, ch. 76-168, Laws of Florida (1976)); Ga.Code §§ 46-6-1 to 46-6-16 (1982 & Supp.1989); Kans.Stat.Annot. §§ 66-1,143 to 66-1,145a (1985 & Supp.1989); N.C.Stat. §§ 62-119 to 62-124 (1982); 17 Okla.Stat.Annot. §§ 201-205 (1986) (amended and partially repealed by 1987 Okla.Laws c. 16); S.C.Code §§ 58-11-10 to XX-XX-XXX (1977). Although the origins of these statutes are obscure, their purposes can be inferred from the development of the radio common carrier industry and the regulatory reaction to that development.
Radio common carriers offer two primary services, mobile radio telephone service (two-way service) and pager service (one-way service). As radio technology developed in the 1960s, the radio common carrier business began to grow. The Federal Communications Commission traditionally awarded licenses to transmit on radio channels, and it thus controlled access to the radio channels used by radio common carriers. The FCC left regulation of market entry and rates to the individual states, however, because of the primarily intrastate nature of the vast majority of the communications transmitted by radio common carriers.
Perceiving a need for regulation of rates and entries in the radio common carrier industry, state utility commissions began to regulate these companies under general statutes empowering them to regulate either "public utilities" or "telephone companies." By asserting jurisdiction over these companies, the utility commissions were able to regulate not only market entry and rates, but also interconnection with land line telephone companies. See American Bar Ass'n, Annual Report of Section of Public Utility Law 174-75 (1965); American Bar Ass'n, Annual Report of Section of Public Utility Law 169-70 (1964).
Despite these initial moves to assert regulatory jurisdiction over radio common carriers, there continued to be some concern among utilities commissioners over whether these companies were "public utilities" or "telephone companies" within the meaning of their respective state statutes. As a result of this concern, the National Association of Railroad & Utilities Commissioners proposed a model act for the regulation of radio common carriers.[3] See *52 American Bar Ass'n, Annual Report of Section of Public Utility Law 177 (1966); see also Mobilfone of Northeastern Pa. v. Pennsylvania Pub. Util. Comm'n, 40 Pa. Cmwlth. 181, 397 A.2d 35 (1979) (noting the uncertainty concerning the regulatory status of radio common carriers during the 1960s and 1970s).
The commissioners' concerns proved to be well-founded. In some states where these companies were regulated as public utilities, state courts ultimately held that radio common carriers were not public utilities. This deprived the utility commissions of regulatory jurisdiction over these companies. See, e.g., Illinois Consol. Tel. Co. v. Illinois Commerce Comm'n, 95 Ill.2d 142, 69 Ill.Dec. 78, 447 N.E.2d 295 (1983); Appeal of Omni Communications, Inc., 122 N.H. 860, 451 A.2d 1289 (1982); but see In re Williams, 626 P.2d 564 (Wyo.), cert. denied, 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981). In other states, the utility commissions proceeded under the theory that radio common carriers were "telephone companies"; this met with varying degrees of success as well. Compare Radio Tel. Comm. v. Southeastern Tel. Co., 170 So.2d 577 (Fla.1965); RAM Broadcasting of Michigan, Inc. v. Michigan Pub. Serv. Comm'n, 113 Mich.App. 79, 317 N.W.2d 295 (1982); and Radio Relay Corp. v. Public Utils. Comm'n, 45 Ohio St.2d 121, 341 N.E.2d 826 (1976) (all finding radio common carriers not telephone companies) with In re Digital Paging Systems, Inc. v. Public Serv. Comm'n, 46 A.D.2d 92, 360 N.Y.S.2d 931 (1974) (radio common carrier company a telephone corporation) and State ex rel. Util. Comm'n v. Two Way Radio Serv., 272 N.C. 591, 158 S.E.2d 855, 863 (1968) (radio common carrier service was telephone service).
Even in those states where courts upheld the exercise of jurisdiction by the commissions, the classification of radio common carriers as telephone companies was perceived to have several detrimental effects. The most important of these was that regulated competition was felt to be in the public interest in the radio common carrier industry, while most statutes governing telephone companies were premised upon a policy of regulated monopoly. This could result in the existence of a land line company in a particular area precluding the certification of a radio common carrier company, even though the commission might feel that regulated competition would serve the public necessity and convenience more appropriately than a regulated monopoly. See State ex rel. Utilities Comm'n v. Two Way Radio Service, supra; see also In re Mobile Radiotelephone Corp., 68 P.U.R.3d 57 (N.C. Util. Comm'n 1967). In New York, a conclusion that radio common carrier companies were "telephone corportions" resulted in the necessity of Public Service Commission approval of changes in ownership of the companies. In re Digital Paging Systems, Inc. v. Public Serv. Comm'n, supra. Finally, there was some concern that by equating radio common carrier companies with telephone companies, the radio common carriers would be entitled to other rights of telephone companies such as the power to condemn private property, as was the case in Williams v. Hyrum Gibbons & Sons Co., 602 P.2d 684 (Utah 1981).
In the meantime, some land line telephone companies had begun offering radio common carrier services, primarily mobile telephone service, to their existing customers as part of an attempt to provide a full range of communications services to their customers. This development raised the question of whether additional certification was necessary for a land line company to offer this service to its existing customers. Some courts approved the conclusion that a land line company's existing certificate of public convenience and necessity implicitly included the authority to furnish mobile telephone service within its land line service area. See, e.g., Radio Relay Corp. v. Illinois Comm. Comm'n, 69 Ill.2d 95, 12 Ill.Dec. 724, 370 N.E.2d 528 (1977); State ex rel. Util. Comm'n v. Two Way Radio Serv., supra. One court concluded that a land line company may offer such service within its certificated area, but it must first *53 have its rates approved like any other radio common carrier. See Able Communications v. South Car. Pub. Serv. Comm'n, 290 S.C. 409, 351 S.E.2d 151 (1986). The offering of these services could be regulated under existing statutes providing for the regulation of telephone companies, so there was no need for these companies to be considered radio common carriers. If radio common carriers were considered telephone companies, however, there existed the possibility that a land line company would be unable to offer full range service to its customers if there were a previously certificated radio common carrier operating in its geographical service area. This situation arose in at least one case. See Industrial Communications Systems v. Public Utils. Comm'n, 22 Cal.3d 572, 150 Cal. Rptr. 13, 585 P.2d 863 (1978). Considering the potential difficulties, it benefited neither land line companies nor radio common carriers to be equated with one another within the land line company's service area.
Thus the perceived ideal situation was for land line telephone companies to offer radio common carrier services within their geographical service areas pursuant to their certificates of public convenience and necessity as telephone companies. In addition to these services offered by telephone companies, one or more radio common carriers could be certificated to compete in the area. A telephone company could not qualify as a radio common carrier for the purposes of preventing entry by a qualified radio common carrier, and likewise a radio common carrier could not prevent a telephone company from offering such services within its geographical service area. See, e.g., RCC of Virginia v. Roanoke & Botetourt Tel. Co., 223 Va. 342, 288 S.E.2d 478 (1982). We conclude that the statutes cited above, including Louisiana's, were enacted to ensure this result and to forestall some of the jurisdictional and regulatory problems presented where no explicit regulatory authority existed.
The Public Service Commission previously followed an interpretation consistent with this purpose. In Cameron Telephone, supra, a telephone company wished to construct a transmitter within its geographical area, but at a location that would allow it to reach customers outside its area. In discussing the regulatory background of the radio common carrier industry, we noted:
Because land line telephone companies are specifically excluded from the provisions of the radio common carrier statute, the commission has not required land line telephone companies to request a certificate of public convenience and necessity to construct or operate land mobile communication facilities within their geographical area. However, the commission has indicated that where a land line telephone company seeks to operate land mobile communications equipment outside of its geographical area (for example, a south Louisiana telephone company intending to offer radio services in north Louisiana), a certificate from the commission would be required.
440 So.2d at 697.
The commission in that case resolved the conflict by requiring the land line companies to construct their transmission facilities adjacent to the location of their telephone exchanges in order to avoid certification as radio common carriers. This ensured that most of the potential customers within range of the transmitters would be their own telephone customers. We went on to state:
The statute on its face deals only with radio common carriers. It does not limit in any way the operations of land line telephone companies. However, the commission has not accepted the statute as completely exempting land line telephone companies. Rather, the commission has interpreted the statute as exempeing land line telephone companies from the certification requirements only when the company is dealing essentially with its own customers, that is, when operating facilities within its geographical boundaries. This view has been consistently held by the commission, as conceded by all parties to this litigation. This interpretation is a reasonable one, since where a land line telephone company seeks to operate outside its boundaries, *54 it is no longer advancing the public policy of providing a full range of communications services to its customers. Therefore, the public policy evident in the radio common carrier statute against unnecessary competition and duplication of services supersedes the literal exemption granted to land line telephone companies. For this same reason, the commission has required that land line companies' transmitting towers may not be located at the edge of the land line boundary without certification. By limiting the location of uncertified towers, the commission has sought to provide adequate protection for a radio common carrier serving the area outside that land line company's boundaries.
440 So.2d at 702.
In Order No. U-16526 the commission reversed this long-standing interpretation of the statute. In so doing, the commission erred. The purpose of the radio common carrier statute, as indicated above, was to limit the number of radio common carriers within each particular service area. The assumption of the statute was that each land line telephone company could, if it saw fit, offer such services to its customers as part of a full range of communications services. Therefore, there would normally be one radio common carrier and one telephone company in each area offering paging and mobile telephone service. This is not the case in the present situation, where a land line company seeks to extend its pager service completely outside its geographical area. The effect here would be to have two businesses offering only radio common carrier service. There are no mystical qualities attached to a company's status as a land line company. Outside its geographical service area, a land line company seeking to offer radio common carrier service is practically indistinguishable from any other corporation seeking to offer the same service. Cameron Telephone cannot offer customers in Lake Charles a full range of communications services; insofar as it operates outside its geographical land line area it is not a "land line telephone company." Cameron can offer its new customers nothing more than pager service. The statute contemplates such one-dimensional competition only when the party seeking to establish a new service has met the statutory requirements for certification.
Our conclusion that the statute requires land line companies seeking to build transmitter facilities outside their geographical service areas to seek certification is also supported by the commission's own previous interpretation of the statute. The interpretation placed upon an ambiguous statute by the agency charged with its enforcement, when adopted soon after the enactment of the statute and adhered to over a long period of time, can be persuasive as to the proper interpretation of the statute. Traigle v. PPG Industries, 332 So.2d 777 (1976); Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111 (1958) (on rehearing); see also 2A N. Singer, Sutherland Statutory Construction § 49.03 (4th ed. 1984). The agency's interpretation is even more persuasive where, as here, it represents that agency's initial attempt at interpreting and regulating a new statutory concept. 2A Sutherland Stat. Constr. § 49.05, at 362. The legislature is presumed to know of the construction adopted, and the long continuance of the interpretation without any sign of legislative disapproval warrants the adoption of that construction by the courts. Washington v. St. Charles Par. Sch. Bd., 288 So.2d 321 (La.1974); Dominion Land Co. v. Stark, 156 La. 124, 100 So. 244 (1924). As noted in Cameron Telephone, supra, the commission has always interpreted the exclusion of land line companies from certification requirements as being limited to those situations in which the land line company seeks to serve primarily its own customers. Since the commission was at least somewhat familiar with the radio common carrier industry, both at the time the statute was enacted and thereafter, its interpretation was presumably based upon a combination of its understanding of the needs of the public and of the legislative intent. This contemporaneous construction, adopted shortly after the statute was enacted and adhered to ever since, is more *55 persuasive than the new construction placed on the statute by the commission, some twenty years later.
The commission argues that it has changed its interpretation of the statute to reflect changes in the radio common carrier industry, and that it is now pursuing a policy of greater competition in the industry. This argument, however, does not provide a persuasive reason for allowing uncertificated market entry by land line telephone companies alone. If greater competition is required, then why must such competition come solely from the land line telephone companies? Further, and more importantly, while the commission has some policy-making powers, it must first and foremost enforce the policy decisions made by the legislature. In this area, as with other common carriers, the legislature has consciously chosen a policy favoring regulated monopolies, because it believes that the public interest is better served by avoiding the costs of unrestrained competition and that public convenience and necessity requires that there be no wasteful duplication of services. Southern Message Service v. Louisiana Pub. Serv. Comm'n, 370 So.2d 874 (La. 1979). The commission may well be correct in its assertion that Louisiana's consumers would be better served by more competition in the radio common carrier industry; we note that at least one other state has deregulated radio common carriers. See 17 Okla.Stat.Annot. § 200 (Supp.1989). In the face of clear legislative direction to the contrary, however, that decision is for neither the commission nor this court to make. If the industry is to be deregulated, then such deregulation must come from the legislature. Until this occurs, we and the commission are bound to enforce the statutes as written.

Did Cameron Telephone Make a Sufficient Showing to Support Certification?
Since we hold that Cameron Telephone was required to meet the statutory requirements for certification, we must determine whether the commission erred in finding that it carried its burden of proof at the hearing. For the reasons set forth below, we conclude that the commission's determinations were reasonable, and the district court erred in reversing the commission's order granting Cameron Telephone a certificate.
Louisiana R.S. 45:1503(C) provides:
The commission shall not grant a certificate for a proposed radio common carrier operation or extension thereof which will be in competition with or duplication of any other radio common carrier unless it shall first determine that the existing service is inadequate to meet the reasonable needs of the public and that the person operating the same is unable to or refuses or neglects after hearing on reasonable notice to provide reasonable adequate service.
This statute imposes a two-part test for certification: (1) that the existing service is inadequate to meet the reasonable needs of the public, and (2) that the person operating the existing service is unable to or refuses or neglects to provide reasonable adequate service. Southern Message Service v. Louisiana Pub. Serv. Comm'n, 370 So.2d 874 (La.1979); Communications Inds. v. Louisiana Pub. Serv. Comm'n, 260 La. 1, 254 So.2d 613 (1971). The party seeking certification bears the burden of proving both elements. Southern Message Service v. Louisiana Pub. Serv. Comm'n, 520 So.2d 734 (La.1988).
In support of its application, Cameron Telephone presented the testimony of four witnesses who had made use of Southern Message's services in the Lake Charles area either as answering service operators or as ultimate consumers such as an emergency room doctor and a fire alarm and sprinkler system operator. These witnesses testified that Southern Message's service had been inadequate for a number of reasons: failure to supply pagers to customers upon request, frequent outages of service, failure to provide backup service during outages, failure to notify or warn customers of outages, lack of service personnel in the area, and failure to pick up and repair defective pagers promptly. In opposition, Southern Message presented testimony by its officers and consultants *56 that it had acquired a backup power system for use in emergencies, that it had continually upgraded its equipment, and that it had sufficient capital, personnel and equipment to adequately service the Lake Charles area. The company's officers admitted, however, that they had no full time maintenance or service personnel in the area. The officer witnesses claimed they had no knowledge of the persistent interruptions or other inadequacies to which the applicant's witnesses testified.
On appeals from decisions of the Public Service Commission, it is not the function of the reviewing court to reweigh the evidence and substitute its own findings of fact for those of the commission. White v. Louisiana Pub. Serv. Comm'n, 259 La. 363, 250 So.2d 368 (1971). Upon judicial review of the commission's determination of whether the applicant has made a showing that the public convenience and necessity is materially promoted by issuance of a certificate, a court will not upset the agency's finding unless it is based on an error of law or is one which the commission could not have found reasonably from the evidence. Southern Message Serv. v. Louisiana Pub. Serv. Comm'n, 520 So.2d 734, 735 (La.1988); Miller Transporters, Inc. v. Louisiana Pub. Serv. Comm'n, 518 So.2d 1018, 1020 (La.1988); M & G Fleet Serv. v. Louisiana Pub. Serv. Comm'n, 443 So.2d 574, 575 (La.1983); Florane v. Louisiana Pub. Serv. Comm'n, 433 So.2d 120, 123 (La. 1983); Dreher Contr. & Eqpt. Rental v. Louisiana Pub. Serv. Comm'n, 396 So.2d 1265, 1266-67 (La.1981); Truck Serv., Inc. v. Louisiana Pub. Serv. Comm'n, 263 La. 588, 268 So.2d 666, 667-68 (1972); Hearin Tank Lines v. Louisiana Pub. Serv. Comm'n, 247 La. 826, 174 So.2d 644, 647 (1965).
In our opinion the commission reasonably determined from all of the evidence that Southern Message's service had been inadequate because of its inability, refusal or neglect to meet the reasonable needs of the public. Where there is conflict in the testimony, as in the present case, the reasonable evaluations of credibility and reasonable inferences of fact by the commission should not be disturbed upon review, even though the court may feel that its own evaluations and inferences are as reasonable. Hearin Tank Lines v. Louisiana Pub. Serv. Comm'n, supra; cf. Rosell v. Esco, 549 So.2d 840 (La.1989).

Conclusion
Cameron Telephone Company, as a land line telephone company seeking to operate a radio common carrier business outside its geographical land line service area, is required to comply with the certification requirements of the radio common carrier statute, La.R.S. 45:1500-45:1504. The commission found that Cameron Telephone had carried its burden of proving the requirements for certification under La.R.S. 45:1503(C). Because this determination was not unreasonable, the district court's judgment setting the certification aside is reversed, the Public Service Commission's order is affirmed and Cameron Telephone's certificate of public convenience and necessity to operate as a radio common carrier in the Lake Charles area is reinstated.
REVERSED AND RENDERED.
COLE, J., dissents, finding the action of the district court to be correct.
NOTES
[1] Although the FCC awards frequencies for radio common carriers, it leaves certification and regulation of such carriers to the individual states. In Louisiana, this regulation is performed by the Public Service Commission. See Cameron Telephone, 440 So.2d at 696.
[2] Although apparently inconsistent with the plain language of its Order No. U-17858, this is the position asserted by the Commission in brief and at oral argument, where counsel stated that the Commission is currently evaluating extraterritorial radio common carrier certificate applications by land line telephone companies under a "fit, willing and able" standard, rather than the higher standard imposed by La.R.S. 45:1503. In support of this interpretation of its second order, the Commission argues that its statements that the second order "shall in no way be construed to infringe upon the authority granted Cameron Telephone Company in the Cameron Orders" preserved the change in prior Commission policy.
[3] The remarkable similarity of most of the cited statutes, including La.R.S. 45:1500-45:1504, suggest that they were based upon either this statute or some other proposed uniform law.