443 So.2d 574 (1983)
M & G FLEET SERVICE, INC.
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
No. 83-CA-1855.
Supreme Court of Louisiana.
November 28, 1983.
Rehearing Denied January 6, 1984.
V. James Stewart, Baton Rouge, for plaintiff-appellant.
Marshall B. Brinkley, Baton Rouge, for defendant-appellee.
John Schwab, Baton Rouge, for intervenor-appellee.
DENNIS, Justice.

Intervention of Material Delivery Service, Inc.
The public service commission granted a motor carrier a certificate of public convenience and necessity to transport cargo statewide for which another carrier had an existing certificate. The initial certificated carrier unsuccessfully opposed the issuance of an additional certificate by the commission, futilely sought judicial relief in the *575 district court, and now appeals directly to this court. See La. Const. art. IV § 21(E).
M & G Fleet Service, Inc. was granted a certificate by the commission in April, 1980 which permitted it to haul, inter alia, fly ash within the state. Fly ash is the residue left when coal is burned, and it is useful as an additive in cement, masonry, soil stabilization and chemical waste management. Up to the commission hearings on February 11, 1982, M & G transported fly ash produced at Big Cajun Power Plant No. 2 at New Roads, Louisiana for Bayou Ash.
Tiger Transport was a holder of a certificate to haul cement, lime, drilling mud and certain other special commodities intrastate. For two to three years prior to the hearing, it engaged in extensive interstate fly ash hauling with shippers from Alabama into Louisiana and from Alabama to Georgia. In October 1981, Tiger applied to the commission for an additional permit to haul fly ash intrastate. After the filing of this application but before the hearing Tiger was acquired by Material Delivery Service, Inc. The commission approved the merger and permitted MDS to substitute itself for Tiger in the certificate proceeding.
M & G protested the application for an additional certificate and objected to the substitution of parties. The procedural objection was overruled by the commission, and this ruling was upheld by the district court. We agree. M & G has not shown that it was prejudiced by the substitution. The merger did not change the substance of the application or the qualifications of the applicant, since MDS plans to maintain Tiger's operations as a separate division of its business.
At the commission hearing, held before an examiner on February 11, 1982, MDS produced evidence that it is well equipped to perform intrastate fly ash handling. It also produced shipper witnesses who testified that fly ash handling services in the state would be inadequate if MDS's application was unsuccessful.
The commission, on March 24, 1982, granted MDS a certificate authorizing it to transport fly ash over irregular routes from, to and between all points in the state. M & G appealed the ruling to the district court and MDS intervened. By stipulation of the parties the case was submitted for decision on the transcript of evidence adduced before the commission. The district court rendered judgment affirming the commission's ruling on July 19, 1983. M & G appealed to this court.
At the commission hearing, M & G opposed the issuance of a competing certificate to MDS. Its opposition and its present appeal is founded on the provision of La. R.S. 45:164 that: "* * * No new or additional certificate shall be granted over a route where there is an existing certificate, unless it be clearly shown that the public convenience and necessity would be materially promoted thereby. * * *"
The legal precepts are well settled which govern the commission's determinations and judicial review of its orders granting certificates of public convenience and necessity under this provision:
The applicant has the burden of clearly showing that the public convenience and necessity would be materially promoted by the issuance of a certificate to it. Florane v. Louisiana Public Service Commission, 433 So.2d 120 (La.1983); Dreher Contracting & Equipment Rental, Inc. v. Louisiana Public Service Commission, 396 So.2d 1265 (La.1981); Truck Service, Inc. v. Louisiana Public Service Commission, 263 La. 588, 268 So.2d 666 (1972); Hearin Tank Lines, Inc. v. Louisiana Public Service Commission, 247 La. 826, 174 So.2d 644 (1965). Upon judicial review of the commission's determination of whether the applicant has made such a showing, a court will not upset the agency's determination unless it is based on an error of law or is one which the commission could not have found reasonably from the evidence. Florane v. Louisiana Public Service Commission, supra; Dreher Contracting & Equipment Rental, Inc. v. Louisiana Public Service Commission, *576 supra; Hearin Tank Lines, Inc. v. Louisiana Public Service Commission, supra.
Appellee contends that the district bench and the bar practicing before the commission have interpreted previous opinions of this court as establishing a "some evidence" or "no evidence" rule to the effect that the commission's determination of whether there has been a clear showing of material promotion of public convenience and necessity will not be reversed if there is of record any evidence which tends to support its decision. If so, these interpretations were in error. This court has often pointed out that a commission determination cannot be set aside for lack of evidence if there is sufficient evidence in the record from which a reasonable person could have made that finding. Dreher v. Louisiana Public Service Commission, supra; Truck Service, Inc. v. Louisiana Public Service Commission, supra; Hearin v. Louisiana Public Service Commission, supra. But it was never this court's intention to indicate that a court will uphold a commission finding if there is insufficient evidence to provide a reasonable basis for the agency's decision.
In our opinion, the district court applied the correct legal precepts and properly upheld the commission's determination. We are unable to say that the commission erred in finding that, by the evidence before it, it was clearly shown that the public convenience and necessity would be materially promoted by the issuance of the certificate to MDS. The following evidence before the commission supplies a reasonable factual basis for the commission's finding:
1. At the time of the commission hearing there were two chief shippers of fly ash in Louisiana: Bayou Ash which had a contract to remove and market the ash produced at Cajun Electric Power Cooperative, Inc., Big Cajun No. 2 Plant in New Roads; and, Ash Management Systems, Inc., which had a contract to remove and market the ash produced at the newly opened Gulf States Utilities' Nelson Coal Plant in Westlake near Lake Charles.
2. A representative of Bayou Ash testified that Big Cajun No. 2's units 1 and 2 should produce 36 truckloads of fly ash per day, although just prior to the hearing operational difficulties prevented maximum output. A third unit was planned which could be in operation by 1983. The storage silo which serves units 1 and 2 can be filled in two days of coal burning. However, it is not safe to fill the silo more than half full. Furthermore, failure to remove the ash from the silo promptly can result in pluggages and safety hazards. In the event long haul trucks are not available as needed, the ash must be removed and dumped elsewhere. Within one week shortly before the hearing, three of M & G's trucks were between one and two hours late in arriving for pickups at Bayou Ash. Such delays caused Bayou Ash to incur added expenses for overtime, resulting in inconvenience to its customers.
According to this witness, fly ash has a wide range of potential users, at least some of which supply products critical to public convenience and necessity: chemical waste management, patching material for roads and streets, soil stabilization, cement and masonry additive.
3. A representative of Ash Management testified that the Nelson Coal Plant was expected to produce 50,000 tons of fly ash in its first year of operation and double that in later years. This amounts to 2000 truckloads annually or 40 weekly in subsequent years. Based on Ash Management's experience in marketing fly ash in Texas, its representative testified that four carriers is a desirable number for handling this volume. MDS has a terminal facility within six miles of the Nelson Coal Plant. M & G has no terminal facilities in the Westlake-Lake Charles area and must dispatch its trucks from New Orleans or Baton Rouge. The next closest fly ash carrier's terminal is located 30 to 40 miles from the Nelson Coal Plant in Orange, Texas.
4. To demonstrate MDS's capabilities and resources, its witness testified that the company terminals were located in New Orleans, Burnside, LaPlace and Westlake; *577 111 pieces of equipment including 49 tractors, 58 tankers and four flat trucks were operational. Its current certificate encompassed authority to transport cement, lime, drilling mud, mineral filler, liquid sugar, molasses and vegetable oils intrastate.
The totality of the shippers' representatives' testimony, as well as reasonable factual inferences the commission could draw from the evidence before it, supports a reasonable finding that the public convenience and necessity would be materially promoted by issuance of the certificate. Accordingly, the judgment of the district court upholding the commission's ruling is affirmed.
AFFIRMED.