457 So.2d 655 (1984)
SOUTH ARKANSAS VACUUM SERVICE OF LOUISIANA, INC.
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
No. 84-CA-0831.
Supreme Court of Louisiana.
October 15, 1984.
*656 Janet Boles Chambers, Monroe, for plaintiff-appellant.
Marshall B. Brinkley, General Counsel, Louisiana Public Service Commission, Baton Rouge, for defendant-appellee.
BLANCHE, Justice.
This case involves the Louisiana Public Service Commission's grant of a certificate of public convenience and necessity to Henry C. McLain, d/b/a McLain Trucking Company, authorizing the transportation of liquid muds, KCL water, calcium chloride, calcium bromide, fresh water and salt water used in the drilling, completion, production and workover of oil and/or gas wells. The permit also allows the transportation of any waste material derived from the above operations to disposal systems, over irregular routes within a radial area of one hundred (100) miles from Minden, Louisiana.
The only issue before the court is whether the issuance of the permit by the Commission to the applicant was in the public's interest.[1]
*657 The Commission found that in view of the evidence present in the record, the public convenience and necessity required and would be materially promoted by the granting of the certificate sought.[2]
The district court for the 19th Judicial District, Parish of East Baton Rouge, affirmed the decision of the Louisiana Public Service Commission by judgment with written reasons. The court contended that the sole issue was whether it was shown at the hearing that the public convenience and necessity would be materially promoted by the granting of McLain's application for a certificate. They based their decision to grant McLain's application on the following findings of fact: (1) that the testimony at the hearing showed McLain was worthy of certification since he had been involved in the "trucking" or "carrier" business since 1969 and that at the time of the hearing, he had been in the vacuum truck business for more than 18 months by means of a leasing arrangement[3] with another certified carrier. Pursuant to this type of arrangement, McLain was operating at least three trucks; and (2) that the testimony presented by Sam L. Mobley and Robert M. Scoggins, applicant's two shipper witnesses, stood unrefuted in showing McLain had performed excellent work for them and had a good reputation among his customers; and (3) that since orders of the Public Service Commission, with respect to the issuance of certificates of public convenience and necessity, are accorded great weight, then the commission could have reasonably concluded that public convenience and necessity would be materially promoted by the granting of the application.
Petitioners appealed to this court pursuant to La. Const. Art. 4, § 21(E).[4]
On appeal to this court, petitioners contend that the district court erred by failing to apply the correct standard of judicial review in ascertaining whether public convenience and necessity would be materially promoted.
The applicable law in this case requires a consideration of La.R.S. 45:164 which states in part that "no new or additional certificates shall be granted over a route where there is an existing certificate unless it be clearly shown that the public convenience and necessity would be materially promoted thereby."
This court stated in Truck Service, Inc. v. Louisiana Public Service Commission, 263 La. 588, 268 So.2d 666 (1972), that:
"The principles are well settled for judicial review of Commission orders granting certificates of public convenience and necessity under this provision. The applicant has the burden of clearly showing that the public convenience and necessity would be materially promoted by the issuance of a certificate to it."
The orders of the Commission are to be accorded great weight and will not be overturned absent a showing that the administrative action was arbitrary and capricious. Truck Service, Inc. v. Louisiana Public Service Commission, 263 La. 588, 268 So.2d 666 (1972); Hearin Tank Lines, Inc. v. Louisiana Public Service Commission, *658 247 La. 826, 174 So.2d 644 (1965); Dreher Contracting & Equipment Rental, Inc. v. Louisiana Public Service Commission, 396 So.2d 1265 (1981).
"A ruling of the Commission may not be deemed arbitrary unless it is shown that it is not supported by some factual evidence."
Beauregard Electric Cooperative, Inc. v. Louisiana Public Service Commission, 378 So.2d 404 (La.1979); B & M Trucking, Inc. v. Louisiana Public Service Commission, 353 So.2d 1323 (La.1977); Truck Service, Inc. v. Louisiana Public Service Commission, supra. But even a showing of "only" some evidence will not save the Commission's order from arbitrariness when that evidence does not and could not reasonably support the Commission's findings. In other words, upon judicial review a court will not upset orders such as the one considered here unless after reviewing the evidence it concludes that the Commission could not have reasonably concluded that there had been a clear showing that the public convenience and necessity would be materially promoted thereby, and that the Commission's action was therefore arbitrary and capricious and a clear abuse of its power. B & M Trucking, Inc. v. Louisiana Public Service Commission, supra; Hearin Tank Lines, Inc. v. Louisiana Public Service Commission, supra.
Public convenience and necessity are not susceptible of precise definition. Rather, what constitutes public convenience must be determined on a case by case basis. Florane v. Louisiana Public Service Commission, 433 So.2d 120 (La. 1983).
Similarly, as stated in M & G Fleet Service, Inc. v. Louisiana Public Service Commission, 443 So.2d 574 (La.1984):
"This court has often pointed out that a commission determination cannot be set aside for lack of evidence if there is sufficient evidence in the record from which a reasonable person could have made that finding."
It is therefore necessary to examine the sufficiency of the evidence presented by the applicant. The record reflects that McLain presented two shipper witnesses in support of his application. The first was Sam L. Mobley, field supervisor for O.B. Mobley Oil Company. He testified that his area of supervision was from Plain Dealing to Simsboro to Elm Grove. Mr. Mobley specifically was charged with the responsibility of seeing after the drilling rigs and workover rigs and also in charge of production. He had been in the business for 30 years; and was especially familiar with the oil and gas related business of North Louisiana. When asked if he had any dealings with vacuum service companies, he answered yes, but not too often lately, because things had slowed down. While he did state that McLain had done excellent work hauling under his lease arrangement, he stated that the last time his business need necessitated a vacuum truck was around Christmas; over three months ago. On cross examination, Mr. Mobley was asked whether he had used any of the already certificated carriers in the area. Of the nine carriers that were available for his potential use, he admitted having used only five. All of these carriers are certificated and domiciled within the 100 mile locale for which McLain is seeking authority. When asked if at the present time there was a surplus of trucks in North Louisiana, he replied "Right, surplus of a lot, rigs, the whole works.".
The second supporting shipper was Robert M. Scoggins, owner of Petroleum Engineering Services Company in Shreveport. He stated that his company performed any services to do with the drilling, completions, workovers, and operations in the oil and gas business in North Louisiana, South Arkansas and East Texas. He has been dealing with vacuum service companies since 1964. Mr. Scoggins stated that he had known McLain for the past six years and that McLain's work was satisfactory. When asked how many times he had used vacuum trucks for work within a 100 mile area of Minden over the last six months, he replied about 7, 8 or 10 times. He was asked if he had any trouble locating vacuum *659 trucks within the past year and he stated that he had not. He was asked whether his business was down and if so, did that result in his business using less vacuum trucks than the year preceding. He replied affirmatively to both questions.
Ten certificated vacuum truck carriers were present in opposition to this application. Four of those present at the hearing are domiciled in North Louisiana in close proximity to applicant's domicile. Jackie D. Bryan testified for South Arkansas Vacuum. Mr. Bryan stated they worked in an area delineated by a line drawn east and west through Alexandria from the Mississippi line to the Texas state line and bounded on the North by the Arkansas line. They had terminals in Springhill, Louisiana and Ruston, Louisiana. His company's authority was for complete vacuum service. South Arkansas Vacuum had done business with both of the applicant's witnesses. When asked whether he had any idle equipment he responded yes, about 40% to 50% idle. He stated that he currently needed a lot more business and that his revenues were down due to the lack of business. Bryan had laid off approximately 10 people in the last eight months. He further testified that granting McLain a license would change the competitive status of his company in North Louisiana, especially in the hauling of salt water. Specifically, he stated that certificating McLain would be adding another service to the North Louisiana area which was not needed, strictly on the salt water hauling basis.
Ronnie McWilliams also testified for Garrett Oilfield Services in opposition to McLain's certificate. Their legal license was a 100 mile radius of Haynesville, Louisiana. He stated that his company had approximately 45% idle equipment. Three men had been recently laid off and the number of drivers reduced due to "economics". He also stated that new business was needed and revenues were down for Garrett.
The testimony from Connie Perry, representing Bob Young Vacuum Service was similar to the above two protestants.
Also, Raymond Thompson from Wilson Well Service testified that business was down and he had idle equipment.
All of the North Louisiana carriers testified that they had adequate equipment to meet the needs of these supporting shippers.
McLain himself testified that his business (leasing) was probably a third of what it was "due to the general slow down of the oilfield in that area." When asked if there was a surplus of vacuum trucks, he replied "Right now, I'm sure there is."
These governing principles were well stated in Gulf Coast Pre-Mix Trucking, Inc., et al v. Louisiana Public Service Commission, 336 So.2d 849 (La.1976):
"In these circumstances the major requirement is that the applicant demonstrate that his proposal is responsive to public demand left unsatisfied by existing authorized carriers. This is customarily and as a matter of practice accomplished through public shipper testimony establishing facts which meet this burden of proof. Generalities do not suffice. Existing carriers have the right to transport all the traffic that they can handle adequately, efficiently, and economically in the territories they serve without the added competition of a new operation. The public is ultimately the loser as the result of unnecessary duplication of utility or transport facilities. Reduction in income and revenues of existing carriers causes the inevitable reduction of service and schedules."
This opinion involves a detailed reference to the evidence because of the court's reluctance to overturn findings of the Commission. Although the applicant presented two witnesses in support of its application, these witnesses did not refute the fact that the existing certificated carriers provided adequate services or that their services dipped below the standard reasonably required for public convenience and necessity. As a matter of fact, their testimony basically amounted to a testimonial that the applicant had provided adequate *660 service during the eighteen month period of his lease contract and that he would continue to provide similar service if certificated by the Commission. This is not a sufficient factual basis from which a reasonable fact finder could determine that the public convenience and necessity would be materially promoted by issuance of a certificate.
There is also other detrimental evidence. There was evidence suggesting a slow down in the oil and gas industry in North Louisiana which is a direct correlation to the issue of need for additional trucking service. Opposition witnesses also testified further that existing authorizing carriers had an abundance of trucks available in the area idle and that only about 50% were being utilized at the present time.
Having concluded that there is no factual basis for the finding that the public convenience and necessity would be materially promoted by the issuance of applicant's certificate by the Commission, we find that the issuance of the certificate was arbitrary and capricious.

DECREE
For the reasons set forth in the foregoing, we reverse the ruling of the district court and the order of the Commission granting relator's certificate of public convenience and necessity is set aside.
REVERSED.
DENNIS, J., concurs with reasons.
CALOGERO, J., dissents.
WATSON, J., dissents being of the opinion that this court should not substitute its judgment for that of the LPSC, especially when affirmed by the District Court.
DENNIS, Justice, concurring.
I respectfully concur.
In M & G Fleet Service, Inc. v. Louisiana Public Service Commission, 443 So.2d 574 (La.1983), this court expressly disapproved of "some evidence" or "no evidence" rules with respect to whether these findings of the commission should be reversed. To the extent that the majority opinion implies a perpetuation of those rules I disagree with the opinion. Otherwise, I am in agreement with the majority opinion.
NOTES
[1] § 164. Common carrier's certificate; contract carrier's permit:

No motor carrier shall operate as a common carrier without first having obtained from the commission a certificate of public convenience and necessity, which shall be issued only after a written application made and filed, a public hearing, due notice given to applicant and all competing common carriers, and a finding by the commission that public convenience and necessity require the issuance of a certificate. No new or additional certificate shall be granted over a route where there is an existing certificate, unless it be clearly shown that the public convenience and necessity would be materially promoted thereby.
No motor carrier shall operate as a contract carrier without having had a public hearing and obtained from the commission a permit to do so, which permit shall not be issued unless in the public interest and until the applicant shall have complied with the requirements of R.S. 45:161 through R.S. 45:172.
[2] The application was approved by a three-one-one vote conditioned upon grantee's compliance with the laws, rules and regulations of the Commission as applicable.
[3] Under the law, it is possible for a person to lease equipment to a certificated carrier and thereby engage in common carriage without himself personally holding a common carrier certificate authorizing the same. Typically, such arrangements call for a lease payment to the certificate holder based on a percentage of revenue from each haul, although the certificate holder provides no equipment or in-the-field service.
[4] (E) Appeals. Appeal may be taken in the manner provided by law by any aggrieved party or intervenor to the district court of the domicile of the commission. A right of direct appeal from any judgment of the district court shall be allowed to the supreme court. These rights of appeal shall extend to any action by the commission, including but not limited to action taken by the commission or by a public utility under the provisions of Subparagraph (3) of Paragraph (D) of this Section.