COLE, Justice.
This appeal is from a judgment of the Nineteenth Judicial District Court reversing an order of the Louisiana Public Service Commission (Commission) granting a certificate of public convenience and necessity. The only issue presented is whether the applicant sustained his required burden of proof under La.R.S. 45:1503(C). The district court held the applicant did not satisfy the statutory burden. We affirm.
PROCEDURAL HISTORY
In February of 1986, Danny J. Lawler d/b/a Danny J. Lawler and Associates (Lawler) filed an application with the Commission for a certificate as a radio common *735 carrier to operate a paging service for the Shreveport area. Southern Message Service, Inc. (SMSI), a radio common carrier which has held a certificate since 1968 to service the same area, opposed the application.
On September 23, 1986, a public hearing was held on the matter before Hearing Officer Edward L. Gallegos, Chief Engineer of the Commission. In his report to tiie Commission he stated:
It is the opinion of the Examiner that sufficient paging service is available in the Shreveport area and that the future plans of the existing carriers will cover any future needs of the public.
Nevertheless, the Commission ordered the application approved stating:
It is the opinion of the Commission that additional service is necessary in the Shreveport area that will cover the entire parish of Caddo and that it is [in] the public interest to authorize additional paying service in the area.
After the Commission denied its application for rehearing SMSI appealed the Commission’s order to the district court and Lawler intervened. The district court found the evidence insufficient to support the Commission’s order and reversed, nullifying the certificate. The Commission chose not to appeal this decision. However, Lawler appealed directly to this court in accordance with Article IV, § 21(E) of the Louisiana Constitution.
LAW
The law governing the issuance of these certificates and judicial review thereof is well settled. No carrier may begin construction or operation of a mobile radio system without first obtaining a certificate from the Commission that the present or future public convenience and necessity requires such construction or operation. La. R.S. 45:1503(A). If the proposed operation of a carrier will compete with or duplicate the service of another carrier, the Commission is prohibited from granting the requested certificate unless it first determines both “that the existing service is inadequate to meet the reasonable needs of the public and that the person operating the same is unable to or refuses or neglects after hearing on reasonable notice to provide reasonable adequate service.” (Emphasis added). La.R.S. 45:1503(C). Southern Message Service, Inc. v. Louisiana Public Service Commission, 370 So.2d 874 (La.1979); Communications Ind., Inc. v. Louisiana Public Service Commission, 260 La. 1, 254 So.2d 613 (1971).
An applicant for a new certificate has the burden of showing clearly the public convenience and necessity is materially promoted by the issuance of the certificate. Miller Transporters, Inc. v. Louisiana Public Service Commission, 518 So.2d 1018, 1020 (La.1988). M & G Fleet Service, Inc. v. Louisiana Public Service Commission, 443 So.2d 574, 575 (La.1983); Florane v. Louisiana Public Service Commission, 433 So.2d 120, 123 (La.1983); Dreher Contracting & Equipment Rental, Inc. v. Louisiana Public Service Commission, 396 So.2d 1265, 1266-67 (La.1981); Truck Service, Inc. v. Louisiana Public Service Commission, 263 La. 588, 268 So.2d 666, 667-68 (1972); Hearin Tank Lines, Inc. v. Louisiana Public Service Commission, 247 La. 826, 174 So.2d 644, 647 (1965). Upon judicial review of the Commission’s determination of whether the applicant has made such a showing, a court will not upset the agency’s finding unless it is based on an error of law or is one which the Commission could not have found reasonably from the evidence. Miller Transporters, Inc. v. Louisiana Public Service Commission, supra; M & G Fleet Service, Inc. v. Louisiana Public Service Commission, supra; Florane v. Louisiana Public Service Commission, supra; Dreher Contracting & Equipment Rental, Inc. v. Louisiana Public Service Commission, supra; Truck Service, Inc. v. Louisiana Public Service Commission, supra; Hearin Tank Lines, Inc. v. Louisiana Public Service Commission, supra.
In its reasons for judgment the district court found the applicant failed to present adequate evidence to carry his burden with respect to either requirement of section 1503(C). As regards the first requirement *736 the district court found the evidence to be insufficient. As to the second, it stated no evidence whatsoever had been presented.
We agree with the determinations of the district court. As will be shown by the summary of the evidence below, the Commission could not have reasonably found the present carriers inadequate to meet the present or future needs of the public within the requirements of section 1503(C).
THE APPLICANT’S CASE
In support of his claim the service of the existing carriers was deficient, Lawler called several witnesses. The first was his father, Joe Lawler. He testified he had used SMSI’s two-way radio telephone service in his construction business. He complained that not enough channels were available in the morning hours. After this difficulty he discontinued the service. He admitted these difficulties occurred over three years before his son’s application and that he did not complain to SMSI about the problems. He also never rented pagers from SMSI.
Lawler’s next witness was Michael T. Willis. Although currently self-employed, he testified he had used the services of SMSI when he was a volunteer fireman and as a driver for Caddo Ambulance Company. He complained the pagers provided by SMSI for the fire department were hard to understand in metal buildings in some parts of Caddo parish. He also had trouble with false alarms. He admitted he had not been with the fire department in over four years. Also, he did not know whether the pagers were donated by SMSI or if the fire department used SMSI’s transmitters.
As an ambulance driver he complained of problems with getting a clear channel on the two-way radio telephone provided by SMSI. He admitted it had been over a year since he had worked for Caddo Ambulance. Although he stated he did not have a financial interest in Caddo Ambulance, he admitted the company was owned by Lawler.
Mr. John Hughes, marketing director for Air Time Communications, a private paging service owned by Lawler not subject to Commission regulation, testified he had conducted a range test of SMSI’s paging service. Although not an engineer or technician, he felt he had a general knowledge of the paging industry because of his previous employment with Motorola Communications in the 1960’s. In order to test SMSI's paging range he went to SMSI and requested long distance paging. Since SMSI did not have a long distance pager on hand and one would not be available until the end of the week, he rented a local pager. He also requested an antenna, but since this would have to be ordered he used an antenna from his own stock. In order to test the paging system he used a mobile telephone obtained from another firm. According to his tests the pagers he provided through Air Time Communications outperformed the SMSI pager. Particularly, he found there was difficulty receiving the page in Vivian, north of Shreveport, and in Atlanta, Texas. He admitted that as a private carrier Air Time was able to use higher powered equipment than regulated carriers.
Mr. Hughes also stated he intended to test the capabilities of one of the other certificate holders in the Shreveport area, Radio & Communication Consultants, Inc., but he “blanked out” and could not remember if he ever performed the tests or what the results might have been.
Mr. Lawler then testified in his own behalf. He stated SMSI’s tone-voice paging was weak in the Pine Island oilfield and in some towns north of Shreveport, such as Vivian and Plain Dealing. He based this opinion on complaints made to him by certain customers of SMSI but declined to name or produce those customers.
Lawler also stated he would provide certain alpha-numeric paging formats referred to as Pocsag and HSC. The Pocsag format was not currently provided by area carriers. With Pocsag a customer could enter a 352 character message using codes on a touch-tone telephone. As for HSC alphanumeric paging, a format in which an operator types the message using the carrier’s computer terminal instead of a touch-tone *737 telephone pad, Lawler felt the existing carriers charged too much. He also stated existing carriers did not provide voice storage or antennas for these pagers. He also testified he had trouble with pagers he rented from Radio & Communication Consultants in 1985, and once had a bad pager when he was a volunteer fireman.
THE OPPOSITION’S CASE
Several witnesses, called by a representative of SMSI, testified as to the adequacy of the existing service and the ability of the current certificate holders to meet the future needs of the public.
Leo Wiman, President of SMSI, testified there was no need for additional facilities in the Shreveport area. As to current service, he testified SMSI provided the highest technology equipment available and currently served the entirety of the Shreveport area. In preparation for the hearing, SMSI requested the Commission to forward copies of any complaints concerning service which had been received in the previous year. None had been received. With regard to long distance paging service, SMSI had recently installed simulcast transmitters, which under current F.C.C. licensing extended coverage to the Athens and Monroe areas.
In response to Lawler’s complaints of lack of voice storage and alpha-numeric paging, Wiman testified SMSI previously provided voice storage but discontinued the service due to lack of demand. As for HSC paging, a customer could request an equivalent service but it is necessary to go through an operator to broadcast the message. Wiman also testified that SMSI recently purchased $150,000.00 in new equipment which, in addition to improving and adding other services, would provide both voice storage and alpha-numeric paging. SMSI also has the financial resources needed to meet the future needs of the public.
Mr. George T. Woodgate, Vice-president of SMSI, elaborated on the capabilities of the new equipment, the custom long distance paging SMSI provided, and responded to the specific complaints of Lawler’s witnesses. He explained the new equipment would be installed in approximately one month. SMSI has also installed a microwave transmission line between Monroe and Shreveport which allows a customer to dial local numbers to access the service without a long distance charge. SMSI also has networking agreements which allows custom paging in the New Orleans, Baton Rouge and Lake Charles areas from Shreveport.
Woodgate also testified that SMSI has customers from Vivian and Oil City which they currently serve without complaint. SMSI’s own field tests of the different paging systems show coverage in the areas Lawler claimed were weak. The only complaints they had were with bad individual pagers, not the range of service. He also explained SMSI was not responsible for the problems experienced by the volunteer fire department because SMSI only donated the pagers, the actual paging was done over a Sheriff’s department transmitter not operated by SMSI.
Mr. Floyd D. Shipley, an independent consulting radio engineer, was offered as an expert in radio communications by SMSI. He was familiar with SMSI’s equipment based on work he had performed for the firm since 1978. In preparation for the hearing he prepared a map showing SMSI’s service coverage based upon FCC propogation standards. This map shows full coverage of not only the area of Lawler’s application, but also the entirety of Sabine, Webster, Claiborne, Red River, Bienville, Jackson, Lincoln, Union and Ouachita parishes, with partial coverages of Natchitoch-es, Winn, Caldwell, Franklin, Richland, Morehouse and West Carroll parishes. Portions of Texas and Arkansas are also covered. Shipley did not make actual field tests since they were not required by the FCC.
Shipley also testified the field test performed by Mr. Hughes with an SMSI pager and Air Time antenna were probably faulty since using an antenna not designed specifically for the pager actually diminishes reception instead of improving it. Also, the areas claimed by Lawler not to be covered are serviced by SMSI’s Blanchard tower, *738 not the Shreveport Tower. Since Hughes did not request a pager for those areas he was not given a pager serviced by the Blanchard tower.
Mr. Eddie Faith, owner of Radio & Communication Consultants, Inc., testified in behalf of SMSI. He stated he did not know the exact range of his pagers but that he covered Caddo and Bossier parishes. He had received no complaints from his customers, including those located in the areas Lawler claimed were weak. Faith offered alpha-numeric paging through an operator but did not offer touch-tone telephone input because it was too hard to use. He did not offer HSC paging at the time because the format was currently in litigation and his engineers questioned its reliability.
As to future expansion, Faith testified he had received additional frequencies from the FCC to simulcast in Bossier, Caddo and Webster parishes and that the necessary equipment had been ordered. He also obtained a one million dollar line of credit to finance future expansion. He was of the opinion that the existing carriers actively competed for business and provided adequate service to the public.
Finally, SMSI called Michael W. Brock, owner of an oil industry investment firm and SMSI customer. He had no financial interest in any of the parties involved. Brock testified he had previously used Lawler’s mobile telephone service but because of the trouble and expense he experienced had switched to SMSI’s paging service. His employees carry voice pagers and have never had trouble with receiving messages in the areas Lawler claimed were weak or in buildings, including Pine Island oilfield, Vivian, Oil City and Plain Dealing. He had no trouble obtaining repairs and felt SMSI provided an excellent system and service.
ANALYSIS
The Commission found Lawler’s witnesses established existing carriers did not cover Bossier parish entirely and experienced trouble in metal buildings. The district court properly found this evidence to be insubstantial. The witnesses were biased and the complaints were dated. Many complaints simply did not pertain to paging services. To the extent this testimony carries any weight, SMSI has clearly refuted these claims.
The Commission also noted the range test conducted by Lawler showed service to the Pine Island oilfield and the southern tip of Caddo Parish to be inadequate. This test was properly disregarded by the district court. It is biased and obviously unprofessional and unscientific. The testimony of Shipley, the consulting engineer, and Brock, a customer using the system in those areas, negates clearly this finding of the Commission.
Assuming Lawler has shown the present service of the existing certificate holders to be inadequate, the record is devoid of evidence indicating these carriers are unable, refuse or have neglected to provide adequate service after a hearing on reasonable notice. To the contrary, the present carriers showed they are investing to expand the services provided.
Since the Commission could not have reasonably found from the evidence that Lawler sustained his burden of proof required by Section 1503(C) of Title 45, the district court properly reversed the order of the Commission issuing the certificate.
For the foregoing reasons the judgment of the district court is affirmed.
AFFIRMED.